RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

2007 JUL 12 PM 7:44

NANCY M.
MAYER-WHITTINGTON
CLERK

|  |  |
|---|---|
| Clyde E. Clements, Jr. | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) Civil Action No. __06-01809 (RBW)__ |
| | ) |
| Alberto R. Gonzales, et al., | ) |
| | ) |
| DEFENDANTS. | ) |
| | ) |

## MOTION TO VACATE; AND FOR LEAVE TO FILE AMENDED COMPLAINT

Comes now Clyde E. Clements, Jr., *pro se* plaintiff, and, pursuant to F.R.Civ.P. 59(e),

respectfully moves this honorable Court to vacate its Order entered June 27, 2007, granting

defendants' motion to dismiss; and, for leave to file his First Amended Complaint, the original of

which is attached hereto. In support of this motion, Plaintiff respectfully refers the Court to the

attached memorandum of points and authorities.

Plaintiff, pursuant to LCvR 7(m), on July 5, 2007, spoke with Andrea McBarnette,

counsel of record for defendants, and asked her, "Would my filing an amended complaint cause

undue prejudice to the defendants?" Her response was that the defendants would not consent.

See paragraph 3 of Plaintiff's declaration, which is attached to said memorandum as "Exhibit 1."

Dated: July 12, 2007

Respectfully submitted,

Clyde E. Clements, Jr.

Clyde E. Clements, Jr., *Pro Se*
P. O. Box 3391
Lynchburg, Virginia 24503
(434) 845-2310

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUL 12 PH 4:44

NANCY M.
MAYER-WHITTINGTON
CLERK

| | |
|---|---|
| CLYDE E. CLEMENTS, JR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. __06-01809 (RBW)__ |
| | ) |
| | ) |
| ALBERTO R. GONZALES, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO VACATE; AND FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

*Pro se* Plaintiff Clyde E. Clements, Jr. ("Plaintiff"), pursuant to F.R.Civ.P. 59(e), hereby respectfully submits this memorandum of points and authorities in support of his motion for the Court to vacate its Order entered June 27, 2007, that grants Defendants' motion to dismiss; and for leave to file Plaintiff's First Amended Complaint. The original of Plaintiff's First Amended Complaint is attached hereto.

## I.  The Court's Vacating its Order Granting Defendants' Motion to Dismiss; and Granting Plaintiff Leave to File Amended Complaint Should Not Cause Undue Prejudice

Plaintiff, pursuant to LCvR 7(m), Plaintiff spoke by phone with Ms. Andrea McBarnette, counsel of record for defendants. Please see paragraph 3 of Plaintiff's declaration, which is attached hereto as "Exhibit 1." Ms. McBarnette did not answer Plaintiff's question, "Will my filing an amended complaint cause undue prejudice to the defendants?" Rather, she said that the defendants would not consent to Plaintiff's filing an amended complaint.

The Court granted defendants' motion to dismiss before defendants answered Plaintiff's Complaint; and before discovery had started. Since defendants should not have expended much time or money, at this point, Plaintiff concludes that the Court's vacating its Order entered June 27, 2007 that grants defendants' motion to dismiss; and granting Plaintiff's motion for leave to file his First Amended Complaint should not cause undue prejudice to the defendants.

## II.    Plaintiff was Not Instructed about Higher Standard for Pleading

Plaintiff was not alerted by the Court as to the heightened pleading requirement for overcoming a claim of sovereign immunity. ". . . In Moore [*Moore v. Agency for International Development*, 994 F.2d 874], the pro se plaintiff conceded that his complaint did not meet the heightened pleading requirement for overcoming a claim of qualified immunity, but argued that the district court should have alerted him to the defects and allowed him to amend his complaint. 994 F.2d at 876. The Circuit Court held that '[b]ecause there is no indication that any of the defendants would have been prejudiced . . ., the district court should have permitted Moore to amend his complaint.' Id. At 877-78. Indeed, it is the Court's duty to inform the plaintiff of the consequences of not adhering to procedural requirements, although the Court appreciates that this assistance does not permit a pro se plaintiff to ignore the Federal Rules of Civil Procedure. Moore, 944 F.2d at 876; see also Calloway v. Brownlee, 366 F. Supp. 2d 43, 55 (D.D.C. 2005)(Walton, J.)(holding that the Court 'must take pains to protect the rights of pro se parties against the consequences of technical errors'); Hisler, 206 F.R.D. at 14." *Kidd v. Howard University School of Law*, Case No. 06-CV-1853, at 3, 4 (D.D.C. 2007) (Walton, J.).

## III.    Plaintiff's First Amended Complaint Contains New Legal Argument, New Facts

Plaintiff avers in his First Amended Complaint that Rules 10 and 20.1 of Rules of the Supreme Court, which he challenges as being unconstitutional, "cannot be squared with the Due

-2-

Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution . . ." See paragraphs 3 through 5 of his First Amended Complaint, attached hereto.

Further, the First Amended Complaint does not contain the allegations of judicial fraud and judicial tyranny that are in his Complaint. Instead, Plaintiff avers that the lower appeals courts gave his appeals unfair treatment. See paragraphs 8 and elsewhere, of First Amended Complaint.

Plaintiff alleges with specificity in his First Amended Complaint, referring to facts of the district court record in support of his arguments. Included as Exhibit A is a copy of excerpts from the transcript of the district court's hearing of defendants' motion for summary judgment.

## IV.    **Plaintiff, with his First Amended Complaint, has Removed Defects of Complaint**

Plaintiff has corrected the "Jurisdiction," "Parties" and "Venue" sections; and has added a "Standing," "Right of Action and Damages Remedy," and "Harm" sections, with his First Amended Complaint. Further, the "Count I" section of the First Amended Complaint includes Plaintiff's Due Process Clause-related argument.

## V.    **Plaintiff Respectfully Submits that the Court's Denying Leave to File First Amended Complaint May be Abuse of Discretion, Absent Sufficient Reason**

Plaintiff has tried numerous times–including as recently as two days after receiving the Court's Order granting defendants' motion to dismiss–to secure legal representation. Please see paragraph 4 of Plaintiff's declaration, attached hereto as Exhibit 1. Plaintiff is confident the Court will conclude that his arguments presented in his First Amended Complaint have merit. If Plaintiff prevails, the public as well as he will benefit. ". . . While the court has sole discretion to grant or deny a request for leave to amend, unless there is a reason for not doing so, such as undue delay, bad faith, dilatory tactics, repeated failure to cure deficiencies, or undue prejudice

-3-

to the opposing party, 'the leave sought should . . . be 'freely given.'' <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)(quoting Fed. R. Civ. P. 15(a)); see also <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (acknowledging that it is an abuse of discretion for a district court to deny leave to amend absent a sufficient reason). The rationale behind this liberal granting of leave to amend a complaint is that '[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test h[er] claim on the merits.' <u>Foman</u>, 371 U.S. at 182. Morever, consideration must be given to the fact that the plaintiff in this case is proceeding <u>pro se</u>.

"The practice of freely giving leave to amend is particularly appropriate in the circumstance of <u>pro se</u> litigants. <u>See</u> <u>Wyant v. Crittenden</u>, 113 F.2d 170, 175 (D.C. Cir. 1940). '<u>Pro se</u> litigants are afforded more latitude than litigants represented by counsel to correct defects in . . . pleadings' and <u>pro se</u> litigants should be given at least minimal notice of the pleading requirements. <u>Moore v. Agency for Int'l. Dev.</u>, 994 F.2d 874, 876-77, (D.C. Cir. 1993) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972)); <u>see also</u> <u>Lindsey v. United States</u>, 448 F. Supp. 2d. 37, 46-47 (D.D.C. 2006) (Walton, J.) (citing <u>Moore</u> and agreeing that district courts should provide <u>pro se</u> litigants with minimal notice of pleading requirements); <u>Hisler v. Gallaudet Univ.</u>, 206 F.R.D. 11, 14 (D.D.C. 2002) (acknowledging the policy that 'an added measure of leniency is extended to <u>pro se</u> litigants [with respect to] procedural requirements') (citations omitted)." *Kidd v. Howard University School of Law*, Case No. 06-CV-1853 at 3 (D.D.C. 2007) (Walton, J.).

In <u>Foman</u>, the Supreme Court ruled that the district court should have granted the plaintiff's motion to vacate; and should have granted her leave to amend her complaint.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion for the Court to vacate its Order entered June 27, 2007 granting Defendants' Motion to Dismiss; and grant Plaintiff's motion for leave to file his First Amended Complaint.

Dated: July 12, 2007

Respectfully submitted,

*Clyde E. Clements Jr.*

Clyde E. Clements, Jr., *Pro Se* Plaintiff
P. O. Box 3391
Lynchburg, Virginia 24503
(434) 845-2310

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLYDE E. CLEMENTS, JR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Civil Action No. <u>06-01809 (RBW)</u> |
| | ) |
| ALBERTO GONZALES, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

UPON CONSIDERATION of plaintiff's motion for the Court to vacate its Order entered

June 27, 2007 granting defendants' motion to dismiss; and for leave to file Plaintiff's first

amended complaint, plaintiff's accompanying supporting memorandum and defendants'

response, and the record herein, it is this _____day of _____, 2007,

ORDERED, that plaintiff's motion for the Court to vacate its Order entered June 27,

2007 granting defendants' motion to dismiss; and for leave to file amended complaint  is

GRANTED.

_____
UNITED STATES DISTRICT JUDGE

cc:    Andrea McBarnette
       Assistant United States Attorney
       555 Fourth Street, N.W.
       Washington, D.C.  20530

       Clyde E. Clements, Jr.
       P. O. Box 3391
       Lynchburg, Virginia 24503

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 JUL 12 PM 7: 45

## CERTIFICATE OF SERVICE

NANCY M.
MAYER-WHITTINGTON

I hereby certify that on this 12th day of July, 2007, I caused a true copy of the foregoing

Plaintiff's Motion to Vacate the Court's June 27, 2007 Order Granting Defendants' Motion to

Dismiss; and for Leave to File First Amended Complaint, Plaintiff's accompanying supporting

Memorandum of Points and Authorities in Support of Plaintiff's Motion to Vacate the Court's

June 27, 2007 Order Granting Defendants' Motion to Dismiss; and for Leave to File First

Amended Complaint, and the proposed Order, together with a copy of Plaintiff's First Amended

Complaint, to be served by certified U.S. mail, postage pre-paid, upon Counsel of Record for

Defendants:

> Andrea McBarnette
> Assistant United States Attorney
> Judiciary Center Building
> 555 Fourth Street, N.W.
> Washington, D.C. 20530

Clyde E. Clements Jr.

Clyde E. Clements, Jr., *Pro Se* Plaintiff
P. O. Box 3391
Lynchburg, Virginia 24503
(434) 845-2310

# DECLARATION

I, Clyde E. Clements, Jr., do hereby declare as follows:

1.  My residential address is 5211 South Amherst Highway, Madison Heights, Virginia 24572. My home phone number is (434) 845-2310.

2.  I am the *pro se* plaintiff in *Clyde E. Clements, Jr. v. Alberto Gonzales,* et al., Civil Action 06-1809, filed in the United States District Court for the District of Columbia.

3.  On July 5, 2007, at approximately 10:25 am, I spoke by phone with Ms. Andrea McBarnette, counsel of record for defendants Gonzales and Roberts in civil action 06-1809. I said to Ms. McBarnette that I am planning to file an amended complaint. I said, in words or in substance, that I am not sure what this means, but I need to ask you, "Will my filing an amended complaint cause undue prejudice to the defendants?" Her response was, in words or in substance, that the defendants will not give their consent for me to file an amended complaint. I asked her again, "Will my filing an amended complaint cause undue prejudice to the defendants?" Ms. McBarnette's response was, "No consent."

4.  I tried to secure legal representation before and after filing my employment discrimination lawsuit on October 30, 1992 in the U.S. District Court for the Western District of Virginia. I communicated with an attorney who practices law in Washington, D.C., about representing me before and after I filed abovementioned civil action 06-1809 in the U.S. District Court for the District of Columbia; and I communicated with him about representing me and preparing my amended complaint on July 6, 2007, after I received the Court's Order granting defendants' motion to dismiss. I also communicated with two attorneys located here in Lynchburg, Virginia, about representing me and preparing my amended complaint. As of this writing, I still do not have legal representation.

5.  This is my own voluntary and true statement.

6.  I base the information contained in this declaration on my personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 10, 2007.

Clyde E. Clements, Jr.
_____
Clyde E. Clements, Jr.

EXHIBIT 1

RECEIVED
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

2007 JUL 12 PM 7: 45

NANCY M.
MAYER-WHITTINGTON
CLERK

| | |
|---|---|
| **Clyde E. Clements, Jr.**<br>Post Office Box 3391<br>Lynchburg, Virginia 24503<br>(434) 845-2310 | )<br>)<br>)<br>)<br>) |
| PLAINTIFF, | )<br>) |
| vs. | ) Civil Action No.  06-01809 (RBW)<br>) |
| **Alberto R. Gonzales,** in his official capacity of<br>U.S. Attorney General,<br>U. S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530 | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **John G. Roberts,** in his official capacity of<br>Chief Justice,<br>Supreme Court of the United States<br>1 First Street, NE<br>Washington, D.C. 20543 | )<br>)<br>)<br>)<br>)<br>) |
| individually and jointly,<br>DEFENDANTS. | )<br>)<br>) |

## FIRST AMENDED COMPLAINT

Plaintiff Clyde E. Clements, Jr. ("Plaintiff"), appearing *pro se*, brings this action seeking

declaratory relief that Rules of the Supreme Court of the United States, Rule 10: "Review on a

writ of certiorari is not a matter of right, but of judicial discretion."; and Rule 20.1: "Issuance by

the Court of an extraordinary writ authorized by 28 U.S.C. Sec. 1651(a) is not a matter of right,

but of discretion sparingly exercised" (Said Rules 10 and 20.1 are hereinafter referred to as

"S.Ct. Rules") are unconstitutional. Plaintiff also seeks injunctive relief and an Order from this

Court directing Defendants to vacate denial by the Supreme Court of the United States

("Defendant Supreme Court") of review of the merits of Plaintiff's seven (7) petitions he filed with Defendant Supreme Court; as well as other relief as this Court may find just and proper.

## INTRODUCTION

1.     This is an action to challenge the constitutionality of Congress's "S.Ct. Rules," due to the fact that–coupled with Defendant Supreme Court's general policy of not invoking its jurisdiction merely to correct errors made by lower courts–said S.Ct. Rules enable lower appeals courts to apply, with impunity, a practice of affirming decisions of courts of first instance that said lower appeals courts know or should know are clearly erroneous and reversible. Plaintiff, at this point, has no evidence as to the motive, but a possible reason an appeals court would adopt such a practice is that it would serve as an effective and inexpensive docket management tool.

2.     The Congress of the United States ("Congress") has authority over and is responsible for said S.Ct. Rules. Under 28 U.S.C. § 2071, Congress granted Defendant Supreme Court rulemaking authority; but 28 U.S.C. § 2074 requires Defendant Supreme Court to submit proposed rules to Congress for approval before they become effective. Therefore, Congress is responsible and accountable for unconstitutional Rules drawn up by Defendant Supreme Court.

3.     Said S.Ct. Rules are unconstitutional on their face, and as applied to Plaintiff because said S.Ct. Rules cannot be squared with the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution ("Due Process Clause").

4.     Defendant Supreme Court has provided clear authority on the constitutional requirement that the lower appeals courts provide fair, effective and meaningful appeals. ". . . Due process requires that a right to appeal be a right to an " 'adequate and effective' appeal" which is "more than a 'meaningless ritual.' " *Id.* At 393, 394, 105 S.Ct. At 834 (quoting *Griffin v. Illinois,*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956), and *Douglas v. California,* 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963))." *Burkett v. Cunningham*, 826 F.2d1208 at 1221.

5.     The S.Ct. Rules, because they make no exception for those petitioners who in words or in substance complain of unfair, ineffective and meaningless appeals below, are in direct conflict

with the Due Process Clause. Clearly, it is not within the discretion of Congress, nor of Defendant Supreme Court, to violate said Due Process Clause.

6.     For evidence in support of his claims, Plaintiff relies on the record of his federal employment discrimination case, Civil Action 92-0061-L, U.S. District Court for the Western District of Virginia ("district court"); and the record of his appeal, Case No. 95-2053, U.S. Court of Appeals for the Fourth Circuit ("appeals court"). The record of Plaintiff's state court employment discrimination case, Law No. CL94000218-00, Campbell County, Virginia Circuit Court ("circuit court"); and Record No. 970879, Supreme Court of Virginia ("VA.S.Ct."), are also relied upon. Lastly, Plaintiff relies on his seven (7) petitions filed with Defendant Supreme Court, all of which were denied without reaching the merits, in accordance with S.Ct Rules.

7.     Plaintiff's evidence demonstrates that, in response to his appeals petition, the appeals court knew or should have known that the district court's granting defendants' motion for summary judgment was clearly erroneous and reversible, but affirmed the erroneous district court decision anyway. Plaintiff's evidence also demonstrates the same for VA.S.Ct.'s finding no reversible error in the circuit court's sustaining defendants' plea in bar and demurrer in its entirety, thereby dismissing Plaintiff's state court employment discrimination suit.

8.     Said S.Ct. Rules, which enabled Defendant Supreme Court to lawfully deny review of Plaintiff's seven (7) petitions (hereinafter referred to as "S.Ct. Petitions") in which he complains in words or in substance of unfair, ineffective and meaningless appeals by the appeals court and by VA.S.Ct., are in conflict with said "Due Process Clause" and are, therefore, unconstitutional.

## PARTIES

9.     Plaintiff Clyde E. Clements, Jr. is a resident of Amherst County, Commonwealth of Virginia, which is in the Western District of Virginia.

10.    Defendant Alberto R. Gonzales ("Gonzales") is the Attorney General of the United States and is responsible for the enforcement of the laws of the United States.

3

11.     Defendant John G. Roberts ("Roberts") is the Chief Justice of the Supreme Court of the United States. As Chief Justice, he has authority to oversee the drawing up and application of Rules of the Supreme Court to petitions filed with Defendant Supreme Court for review.

## JURISDICTION

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1361, and 2201 because this declaratory judgment action challenges the constitutionality of federal statutes. This Court's general federal question jurisdiction is invoked by the due process clause of the Fifth and Fourteenth Amendments to the Constitution. This Court has personal jurisdiction over Defendants Gonzales and Roberts.

## VENUE

13.     Venue is properly laid in this District under 28 U.S.C. § 1391(e) because the events or omissions giving rise to Plaintiff's claims occurred in this district–specifically, Defendant Supreme Court's lawfully denying Plaintiff's seven (7) petitions without reaching the merits, as allowed by said Rules of the Supreme Court, Rules 10. and 20.1.

## STANDING

14.     Plaintiff has standing to bring and maintain this action because he was directly harmed by Defendant Congress's S.Ct. Rules that Defendant Supreme Court lawfully applied to his seven (7) petitions filed with Defendant Supreme Court. Plaintiff was denied a fair, effective and meaningful appeal by the presiding federal appeals court; and by the Supreme Court of Virginia. And, when said petitions were lawfully denied at the discretion of Defendant Supreme Court, those unfair, ineffective and meaningless appeals were allowed to stand.

## RIGHT OF ACTION AND DAMAGES REMEDY

15.     As averred herein, Defendants' S.Ct. Rules are in violation of the Due Process Clause where, as in the case of Plaintiff, said S.Ct. Rules are relied upon by Defendant Supreme Court to deny without reaching the merits of his petitions in which he avers, in words or in substance, that he was provided an unfair, inadequate and ineffective appeal by the federal appeals court; and by the Virginia Supreme Court. A cause of action and damages remedy is implied directly

4

under the Constitution when the Due Process Clause is violated. ". . . where plaintiff rested her claim directly on the due process clause of the Fifth Amendment, alleging that her rights under that Amendment had been violated and that only the judiciary could vindicate those rights, plaintiff was an appropriate party to invoke the general federal question jurisdiction of the district court to seek relief and had a cause of action under the Fifth Amendment; . . . a remedy in damages would be available if plaintiff were able to prevail on the merits of her constitutional claim . . ." *Davis v. Passman*, 442 U.S. 228 at 228, 99 S.Ct. 2264 at 2264.

## EVENTS UNDERLYING PLAINTIFF'S INJURIES

### A.    Actions of the Presiding Courts

16.    Plaintiff filed his employment discrimination suit, *Clyde E. Clements, Jr. v. The Babcock & Wilcox Company, et al.,* Civil Action 92-0061-L, in the United States District Court for the Western District of Virginia, Lynchburg Division ("district court") on October 30, 1992. D.E. 1.[1] Plaintiff filed his Amended Complaint on February 5, 1993. D.E. 7. Plaintiff filed his Second Amended Complaint ("2d.Am.Complaint") on June 28 1994. D.E. 21.

17.    In its Order entered September 9, 1994, the district court granted defendants' motion for the court to reconsider its Order granting Plaintiff leave to amend; and, among other things, struck all but four defendants and struck Count 4 through Count 9, which included Plaintiff's state tort claims, without providing a reason for doing so. D.E. 33.

18.    To preserve his state tort claims, Plaintiff subsequently filed them in Campbell County, Virginia Circuit Court, Law No. CL94000218-00.

19.    Defendant The Babcock & Wilcox Company ("B&W") filed its motion for summary judgment in the district court on December 16, 1994. D.E. 41. In its accompanying memorandum of points and authorities, B&W includes its allegation that Plaintiff cannot establish a prima facie case because no causal connection existed; and they state, "Because there

---

[1] "D.E.___" refers to the docket entry numbers on the docket sheets maintained by the district court.

5

is no genuine issue of fact as to the element of causation, B&W is entitled to summary judgment." B&W also states, ". . . B&W can articulate a legitimate, non-retaliatory reason for terminating Mr. Clements – Mr. Clements' disloyal and disruptive conduct in repeatedly making meritless accusations against B&W, along with many of its officers, managers and employees." D.E. 41 at 14, 15.

20.    On January 18, 1995, Plaintiff took the sworn deposition of defendant James Conner, then vice president and general manager of B&W's Naval Nuclear Fuel Division ("Conner"), Plaintiff's former employer. Page 13, Lines 17 through 19 of the transcript of said deposition, state that Plaintiff asked him, "Do you have any reason to believe that I was a disloyal employee?" Defendant Conner responded, "No." Conner's "No" response creates a genuine issue of material fact (hereinafter referred to as "Genuine Issue"). Page 11 of said transcript documents that Conner admitted having knowledge of Plaintiff's making allegations of wrongdoing by B&W managers. On March 14, 1995, the district court filed Plaintiff's motion for leave to file the transcript of Conner's deposition. D.E. 63. Said deposition was filed by the district court on May 10, 1995. D.E. 69

21.    Plaintiff, in Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl.Response") [D.E. 55], states, "There is a Causal Connection Between Plaintiff's EEOC Charges and his Termination: . . B&W, in the Disciplinary Report (See Item "M" of Defendants' Statement of Undisputed Material Facts in Support of Defendant Babcock & Wilcox Company's Motion for Summary Judgment) . . . clearly documents the causal connection between Plaintiff's opposing acts made unlawful by Title VII and B&W's firing of him. . . . To the extent that Pretext is an issue, the plain language of said Disciplinary Report contradicts Defendants' key assertion. This creates a genuine dispute of material fact. There being a question of fact, this issue must go to trial. (Hereinafter referred to as "Causal Element")" D.E. 55 at 15, 16.

22.    Plaintiff, in said Pl.Response, also presents the genuine issue of material fact documented by the transcript of James Conner's deposition, discussed above. D.E. 55 at 20.

6

23.    A copy of said B&W's Disciplinary Report, which provides the causal element of
Plaintiff's retaliatory discharge claim, is attached to 2d.Am.Complaint at "Attachment V."

24.    A copy of the E.E.O.C. Determination of Plaintiff's charge of sexual harassment, Charge
Number 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, is attached to Plaintiff's 2d.Am.Complaint as "Attachment O-1." The
E.E.O.C. states on Page 2, "Case precedent has established that a one time incident, which
occurred in this case, . . ." In other words, the E.E.O.C. investigator determined that the incident
Plaintiff complained of to B&W, his then employer, as sexual harassment did take place.

25.    A copy of the E.E.O.C. Determination of Plaintiff's charge of retaliatory discharge,
Charge Number 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, is attached to Plaintiff's 2d.Am.Complaint as "Attachment Y." As
stated on Page 2, the E.E.O.C. determined that Plaintiff was discharged in part in retaliation for
opposing practices made unlawful by Title VII. The E.E.O.C. determined that B&W's
Disciplinary Report was the evidence of the unlawful retaliatory discharge. B&W's claim that it
fired Plaintiff for disloyalty, was accepted by the E.E.O.C. as the "lawful" reason for Plaintiff's
termination, without conducting an on-site investigation.

26.    The transcript of the district court's March 9, 1995 hearing of B&W's motion for
summary judgment [D.E. 66] ("Motions Hearing"), a copy of excerpts of which is attached
hereto as "Exhibit A," document that Plaintiff timely alerted the district court to said Causal
Element and to said Genuine Issue. Plaintiff presents to the district court said Causal Element,
from Page 28, Line 23 to Page 30, Line 22; and he presents said Genuine Issue from Page 30,
Line 23 to Page 34, Line 15. See Exhibit A, attached hereto. As demonstrated by Exhibit A, the
defendants did not object when Plaintiff presented evidence of said Causal Element and Genuine
Issue.

27.    On April 24, 1995, the district court entered its Memorandum Opinion [D.E. 67] and
Order [D.E. 68] granting defendants' motion for summary judgment, even though the district
court knew or should have known that the record contained at least one genuine issue of material
fact; and that Plaintiff had succeeded in proving a prima facie case of retaliatory discharge.

7

28.    Even though the district court had on record both E.E.O.C. Determinations; and B&W's Disciplinary Report, which the E.E.O.C. had determined provided the causal connection between Plaintiff's complaining of acts made unlawful by Title VII and B&W's firing Plaintiff, the district court, in said Memorandum Opinion, states, ". . . Clements has failed to prove the causation element. . . . plaintiff has not presented a shred of evidence, other than bare allegations, to meet his burden to show that B&W would not have terminated him but for his claims with the EEOC. . . . Clements has not presented a scintilla of evidence to show that B&W's stated reasons for his discharge were merely a pretext." D.E. 67 at 9, 10, 11. The defendants, during said Motions Hearing, alerted the district court to the E.E.O.C.'s mixed motives determination of Plaintiff's charge of retaliatory discharge. D.E. 66 at 6.

29.    The district court knew or should have known that the record contained evidence that B&W's proffered reason for firing Plaintiff, disloyalty, was a pretext; and that the record contained at least one genuine issue of material fact. Therefore, the district court knew or should have known that its Order granting defendants' motion for summary judgment was in error.

30.    On June 26, 1995, the appeals court filed Plaintiff's Informal Brief of Appellant ("Appeal Brief") in which he complained of the district court's disregarding said Causal Element and Genuine Issue, as well as nearly all of Plaintiff's supporting evidence of record.

31.    The appeals court decided Plaintiff's appeal on November 27, 1995, and, in its unsigned per curiam opinion, states, ". . . We have reviewed the record and the district court's opinions and find no reversible error. Accordingly, we affirm on the reasoning of the district court. . . ."

32.    The appeals court knew or should have known that the record of the district court contained reversible error; and, therefore, knew or should have known that its order stating that it found no reversible error; and that it affirmed on the reasoning of the district court, was in error.

33.    The appeals court filed Plaintiff's rehearing petition on December 11, 1995, in which Plaintiff alerted the appeals court to its overlooking said Causal Element and Genuine Issue, as well as other material facts of record.  The appeals court filed its Order denying Plaintiff's rehearing petition on January 12, 1996.

8

34.    Plaintiff timely filed with Defendant Supreme Court his petition for a writ of certiorari, No. 95-1314, and his rehearing petition, in which Plaintiff, in words or in substance, complains of the appeals court's unfair, ineffective and meaningless treatment of his appeal. Plaintiff includes the appeals court's overlooking the Causal Element and Genuine Issue, as well as other material facts of record. Both petitions were lawfully denied by Defendant Supreme Court, in accordance with S.Ct. Rules.

35.    Plaintiff timely filed his Petition for Writ of Certiorari, 96-1360, which was denied.

36.    Plaintiff, in Plaintiff's Memorandum of Law in Opposition to Defendants' Plea in Bar and Demurrer, filed by the circuit court on September 17, 1996, argued that because he was denied an opportunity to fully and fairly litigate by the district court; and because the district court had disregarded certain material facts of record, the doctrine of res judicata does not apply.

37.    The circuit court, on January 27, 1997, entered its Order sustaining defendants' plea and demurrer, grounding its decision in part on erroneous findings and rulings of the district court.

38.    VA.S.Ct., on September 9, 1997, denied Plaintiff's petition for appeal, based on its finding of no reversible error in the circuit court's judgment.

39.    Plaintiff then filed Petition for Writ of Certiorari and Petition for Rehearing, 97-1260.

40.    Plaintiff's last petition, Petition for Writ of Mandamus , *In re Clements* 05-689, was denied by Defendant Supreme Court on February 21, 2006; and his rehearing petition was denied on April 17, 2006. All seven of his petitions were lawfully denied by Defendant Supreme Court without reaching the merits, as allowed by S.Ct. Rules. In all seven of Plaintiff's petitions filed by Defendant Supreme Court, Plaintiff complains in words or in substance of the unfair, ineffective and meaningless appeals provided by the appeals court and by VA.S.Ct.

41.    There are no fatal procedural errors in any of Plaintiff's pleadings he filed with the federal and state courts for the cases subject of this Complaint.

**B.    Harm to the Public**

42.    All courts are public institutions of justice that must be protected from even the appearance of unfair practices. The facts of record referred to herein above give at least the

9

appearance of unfair practices by the lower federal and state courts that presided over Plaintiff's civil actions. Said S.Ct. Rules, while serving as a no doubt much-needed docket management tool for Defendant Supreme Court, have done so at the expense of the integrity of our judiciary.

**C.   Harm to Plaintiff**

43.   Plaintiff has expended thousands of dollars, not to mention the effect of years of related stress, in his struggle with the courts for fair treatment, over the last fifteen years. Having been fired, whether unlawfully or not, changes overnight one's ability to earn a decent living. As documented by the district court record, Plaintiff was rewarded with raises and promotions until the day he was fired without notice. The following two years, Plaintiff earned minimum wage.

**COUNT 1**

**(Due Process Clause of Fifth and Fourteenth Amendments)**

44.   Plaintiff repeats and realleges paragraphs 1 through 43.

45.   The Due Process Clause of the Fifth Amendment states that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Constitution, Amendment V.

46.   The Due Process Clause of the Fourteenth Amendment states, in part, ". . . nor shall any state . . . deprive any person of life, liberty, or property, without due process of law."

47.   The Due Process Clause serves to protect litigants from unfair, ineffective and meaningless appeals. ". . . the procedures used in deciding appeals must comport with the demands of Due Process and Equal Protection clauses of the Constitution." *Evitts v. Lucey*, 469 U.S. 387 at 393, 105 S.Ct. 830 at 834.

48.   Rules of the Supreme Court, Rules 10 and 20.1 are in violation of the Due Process Clause of the Fifth and Fourteenth Amendments, in that they enabled the appeals court and VA.S.Ct. To deny Plaintiff a fair, effective and meaningful appeal, which is fundamentally unfair.

49.   Plaintiff's costly and stressful fifteen year legal battle has primarily been a struggle with the presiding courts, than with the defendants in his federal and state court employment discrimination suits. It has been a struggle for fair treatment from the federal and state appeals

10

courts, as well as from Defendant Supreme Court. Said courts are compelled by aforementioned Due Process Clauses to provide Plaintiff with a fair, effective and meaningful appeal.

50.     Accordingly, Plaintiff seeks a declaratory judgment that Rules of the Supreme Court, Rules 10 and 20.1 are unconstitutional both facially and as applied to Plaintiff.

51.     A declaratory judgment will terminate the controversy between the parties.

WHEREFORE, Plaintiff requests this Court enter judgment:

1.     Declaring that Rules of the Supreme Court, Rules 10 and 20.1 are unconstitutional both facially and as applied to Plaintiff;

2.     Enjoining Congress of the United States and Defendant Supreme Court from applying said Rules to any petition in which petitioner complains in words or in substance of an unfair, ineffective and meaningless appeal provided by a lower appeals court.

3.     Ordering Defendant Supreme Court to review the merits of Plaintiff's seven (7) petitions filed with Defendant Supreme Court.

4.     Awarding Plaintiff the costs of this action, including reasonable attorneys' fees; and

5.     Awarding any further relief this Court deems just and appropriate.

Dated: July 12, 2007                              Respectfully submitted,

Clyde E. Clements Jr.

Clyde E. Clements, Jr., *Pro Se*
P. O. Box 3391
Lynchburg, Virginia 24503
(434) 845-2310

11

IN THE UNITED STATES DISTRICT COURT

FOR THE

WESTERN DISTRICT OF VIRGINIA

LYNCHBURG DIVISION

* * * * * * * * * * * * *

CLYDE E. CLEMENTS,
          PLAINTIFF

                                CIVIL ACTION

VERSUS                         #92-CV-61

BABCOCK & WILCOX COMPANY, ET AL.,
                         DEFENDANTS

* * * * * * * * * * * * * *


BEFORE:         THE HONORABLE JAMES C. TURK,

                DISTRICT JUDGE


MOTIONS


LYNCHBURG, VIRGINIA

MARCH 9, 1995

1     STENOGRAPHIC REPORT OF THE MOTIONS MADE BY THE

2     RESPECTIVE PARTIES, THE ACTION BY THE COURT IN RESPECT

3     THERETO AND ALL OTHER INCIDENTS OF THE HEARING HELD IN THE

4     CASE OF CLYDE E. CLEMENTS, PLAINTIFF, VERSUS BABCOCK & WILCOX

5     COMPANY, ET AL., DEFENDANTS, CIVIL ACTION #92-CV-61, IN

6     LYNCHBURG, VIRGINIA ON MARCH 9, 1995, AS HEARD BEFORE THE

7     HONORABLE JAMES C. TURK, DISTRICT JUDGE.

8

9     APPEARANCES:               CLYDE E. CLEMENTS
                              P. O. BOX 3391

10                         LYNCHBURG, VIRGINIA   24503

11                         PRO SE

12

13                         JON A. GEIER, ESQ.
                              1299 PENNSYLVANIA AVENUE, N.W.

14                         WASHINGTON, D.C.   20004-2400

15                         COUNSEL FOR THE DEFENDANTS

16

17

18

19

20

21

22

23

24

25

1    MR. CLEMENTS: OH, DISCHARGED? OKAY. REGARDING

2    RETALIATORY DISCHARGE ---

3    THE COURT: YOU KNOW, THERE WAS CERTAINLY NO LOYALTY

4    THERE WHEN YOU WERE WRITING ALL OF THESE LETTERS AND SO

5    FORTH. I DON'T --- I THINK THEY HAD TO TERMINATE YOU,

6    DIDN'T YOU?

7    MR. CLEMENTS: NO, SIR.

8    THE COURT: HOW COULD A COMPANY KEEP YOU ON WHEN YOU

9    WERE DOING THESE THINGS?

10    MR. CLEMENTS: WELL, THEY DID AND I'VE GOT ---

11    THE COURT: THEY KEPT YOU ON, YOU KNOW, BECAUSE I

12    THINK OF THE FACT THAT YOU HAD BEEN BASICALLY A GOOD

13    EMPLOYEE AND SO FORTH, KEPT YOU ON JUST AS LONG AS THEY FELT

14    LIKE THEY POSSIBLY COULD.

15    MR. CLEMENTS: DO YOU WANT TO HEAR MY ARGUMENT REGARDING

16    A PRETEXT? WHICH ONE WOULD YOU LIKE TO HEAR FIRST?

17    THE COURT: I ASKED YOU WHAT EVIDENCE THAT YOU HAD THAT

18    ANYTHING THEY DID TO YOU WAS IN RETALIATION FOR YOUR

19    ALLEGING THAT YOU HAD BEEN SEXUALLY HARASSED. YOU DON'T HAVE

20    ANY, I DON'T THINK.

21    MR. CLEMENTS: YES, I DO. YES, I DO.

22    THE COURT: OKAY.

23    MR. CLEMENTS: ON PAGE TEN (10) OF EIGHTEEN (18) OF THE

24    ATTACHMENT TO ATTACHMENT D ---

25    THE COURT: OKAY. WHAT IS THAT? WHAT DO YOU HAVE?

1    MR. CLEMENTS:  THIS IS DOCUMENTATION OF WHAT OCCURRED IN

2    A MEETING ON JANUARY THE 8TH, 1990 WITH LARRY LINEBERRY,

3    THEN MANAGER OF HUMAN RESOURCES, AND MERLE ALVIS, MANAGER OF

4    EMPLOYEE COMMUNICATIONS AND RELATIONS.

5        THE COURT:  OKAY.  WHAT HAPPENED THERE?

6        MR. CLEMENTS:  I REPORTED MY ALLEGATION OF SEXUAL

7    HARASSMENT BY MS. BOYKAN - AND I'M QUOTING HERE - "MRS. ALVIS

8    SAID IN AN ANGRY TONE THAT LAURIE MUST HAVE BEEN VERY

9    EMBARRASSED WHEN I REPORTED IT TO GARY IN HER PRESENCE.  SHE

10   ALSO SAID," QUOTE, "YOU MUST HAVE DONE SOMETHING OR SAID

11   SOMETHING TO ENCOURAGE HER TO DO THAT.  I DON'T THINK YOU

12   ARE CAPABLE OF WORKING WITH WOMEN."  END QUOTE.  THAT ---

13       THE COURT:  WELL, WOULDN'T THAT BE THE LOGICAL CONCLUSION

14   OF ANYONE IF THEY HAD INVESTIGATED AND FOUND OUT THAT IT WAS

15   NOT TRUE?  THEN CERTAINLY THAT'S A LOGICAL CONCLUSION THAT

16   YOU'RE NOT CAPABLE OF WORKING WITH ---

17       MR. CLEMENTS:  BUT LISTEN.  "YOU MUST HAVE DONE SOMETHING

18   OR SAID SOMETHING TO ENCOURAGE HER TO DO THAT."  WHAT

19   MRS. ALVIS IS SAYING IS THAT SHE IS ACCEPTING MY WORD AS FACT.

20       THE COURT:  NO, NO, NO, I DON'T THINK THAT AT ALL.

21   WELL, ANYWAY, I KNOW ABOUT THE CASE.  I'LL JUST HAVE TO GO

22   OVER IT AND LET YOU KNOW SOMETHING HERE JUST AS QUICKLY ---

23       MR. CLEMENTS:  YOUR HONOR, I WOULD LIKE TO PRESENT MY

24   ARGUMENT ON PRETEXT.  I THINK I HAVE --- I WOULD APPRECIATE

25   YOUR HONOR ALLOWING ME TO DO THAT.

1    THE COURT: Okay.

2    MR. CLEMENTS: And I'm referencing page fourteen (14)

3    through the first paragraph of page nineteen (19) of

4    plaintiff's response to defendant's motion for summary

5    judgment and I say here, from Turrick v. Holland Hospitality,

6    Incorporated, 64 Fair Employment Practice case, being a

7    786 Michigan 1994. Quote: "In contrast to the court's

8    ruling in Price Waterhouse v. Hopkins, 490 U. S. 228 104 LED

9    2d 268, 109 S. Court 1775, 1989, the Civil Rights Act of

10   1991 instructs that a finding of legitimate factors which

11   actually motivate a defendant does not result in a victory

12   for defendant. Instead, plaintiff's damage recovery will be

13   limited if the employer in a mixed motive case proves it

14   would have taken the same action in the absence of the

15   impermissible motivating factor." 42 U. S. Code Section ---

16   THE COURT: That's the law. I want the factual

17   evidence that you have that the reason given by the

18   defendant was a sham or pretext. That's what you said you

19   wanted to tell me about.

20   MR. CLEMENTS: Yes, sir. I have it here. I'm referring

21   to Exhibit M of statement of undisputed material facts.

22   THE COURT: Okay.

23   MR. CLEMENTS: This is the disciplinary report that

24   summarizes the reasons why Babcock & Wilcox fired me and

25   actually in this document B & W admits that it fired me for

1    COMPLAINING OF ACTS MADE UNLAWFUL BY TITLE 7. IN FACT, THE

2    EEOC INVESTIGATOR TOLD ME THAT ---

3        THE COURT: ALL RIGHT. NOW, WHERE DO YOU SEE THAT?

4    WHERE DO THEY ADMIT THAT?

5        MR. CLEMENTS: OKAY. I'M GOING TO PARAPHRASE HERE, SIR.

6    IT SAYS: "YOU HAVE PROFESSED TO FOLLOWING BELIEFS AND MADE

7    THE FOLLOWING ACCUSATIONS AGAINST MANAGEMENT IN YOUR

8    WRITINGS."

9        THE COURT: RIGHT.

10       MR. CLEMENTS: AND I'M GOING TO DROP DOWN HERE TO

11   ITEM SIX (6).

12       THE COURT: OKAY.

13       MR. CLEMENTS: "TWO (2) COMPANY EMPLOYEES, INCLUDING THE

14   PRESIDENT AND THE GENERAL COUNSEL AS WELL AS THE DIVISION

15   VICE PRESIDENT, PERSONNEL MANAGER, SECURITY MANAGER,

16   ENGINEERING MANAGER AND OTHERS HAVE HARASSED, DISCRIMINATED

17   AGAINST AND RETALIATED AGAINST YOU."

18       THE COURT: YOU SEE, WHAT THIS DOCUMENT SAYS IS THAT

19   THAT'S WHAT YOU HAVE ALLEGED.

20       MR. CLEMENTS: THAT'S RIGHT. AND THEY'RE SAYING THAT'S

21   WHY I WAS FIRED, FOR COMPLAINING OF ACTS MADE UNLAWFUL BY

22   TITLE 7. THAT'S A RETALIATORY DISCHARGE ---

23       THE COURT: NO, NO, NO. YOU WERE DISCHARGED, ACCORDING

24   TO THEM, FOR THESE WRITINGS THAT YOU, YOU KNOW, THAT YOU

25   WROTE AND THE MESSAGES THAT YOU SENT THAT THEY SAID THAT

1  THERE WAS NO FOUNDATION OR REASON FOR.

2  MR. CLEMENTS: THAT'S THE SECOND PART OF MY ARGUMENT,

3  SIR. I'D LIKE TO PRESENT THAT.

4  THE COURT: OKAY.

5  MR. CLEMENTS: I APPRECIATE YOUR PATIENCE. OKAY. B & W'S

6  PROPER REASONS OF MY WRITING LETTERS TO THE NAVY AND THE

7  DEPARTMENT OF ENERGY DID NOT MOTIVATE IT AT THE TIME OF ITS

8  DECISION TO FIRE ME. AND FOR THE CONVENIENCE OF THE COURT,

9  YOUR HONOR, I HAVE PUT TOGETHER ALL OF THE LETTERS THAT I

10  WROTE TO THE CUSTOMER AND SO IT WILL BE A LOT SIMPLER FOR

11  YOU TO FIND THEM AND I'D LIKE TO MAKE THEM AN EXHIBIT IF

12  THAT'S OKAY.

13  THE COURT: ALL RIGHT. DO YOU HAVE THEM TOGETHER?

14  MR. CLEMENTS: YES, SIR, I HAVE THEM STUCK ALL TOGETHER

15  SO THAT ---

16  THE COURT: DO YOU HAVE A COPY FOR DEFENSE COUNSEL?

17  MR. CLEMENTS: YES, I DO, SIR.

18  THE COURT: ALL RIGHT.

19  MR. CLEMENTS: PLEASE NOTE THAT MY FIRST LETTER TO THE

20  NAVY IS DATED OCTOBER 29TH, 1990. MY FIRST LETTER TO THE

21  DEPARTMENT OF ENERGY IS DATED NOVEMBER THE 21ST, 1990. BY

22  NOT DISCIPLINING ME IN ANY WAY FOR MY LETTER WRITING, THE

23  COMPANY WAIVED ANY RIGHT IT MAY HAVE HAD TO USE MY WRITING

24  LETTERS TO ITS CUSTOMER AS A LEGITIMATE REASON FOR FIRING

25  ME.

1    THE COURT:  WELL, THEY WERE TRYING --- I THINK THE

2    COMPANY WAS TRYING TO HELP YOU AND TRYING TO GET YOU TO CEASE

3    FROM DOING THESE THINGS, BUT YOU JUST KEPT ON.

4        MR. CLEMENTS:  BUT YOUR HONOR ---

5        THE COURT:  SO I DON'T THINK THERE IS ANY WAIVER.

6        MR. CLEMENTS:  YOUR HONOR, THE FACT IS BABCOCK & WILCOX

7    NEVER EVEN MADE ME AWARE OF THEIR DISPLEASURE THAT THEY MAY

8    HAVE HAD REGARDING MY WRITING LETTERS.  THEY NEVER MADE ME

9    AWARE.

10        THE COURT:  WELL, YOU OUGHT TO HAVE KNOWN.

11        MR. CLEMENTS:  YOUR HONOR, I HAVE TO ---

12        THE COURT:  YOU'RE AN INTELLIGENT MAN.  AND I MEAN THAT

13    AS A COMPLIMENT.  YOU ARE INTELLIGENT.  YOU WOULD KNOW THAT.

14        MR. CLEMENTS:  I WOULD LIKE TO CONTINUE WITH MY ARGUMENT.

15        THE COURT:  OKAY.  BUT WE'RE GOING TO BRING IT TO A

16    CLOSE BECAUSE, I MEAN, YOU'RE NOT TELLING ME ANYTHING THAT

17    YOU HAVEN'T INCLUDED IN YOUR BRIEF.  YOU'RE JUST READING FROM

18    IT NOW, AREN'T YOU?

19        MR. CLEMENTS:  I'M JUST ABOUT DONE, SIR.

20        THE COURT:  OKAY.

21        MR. CLEMENTS:  IT IS ALSO AN UNDISPUTED FACT THAT B & W

22    CONTINUED TO REWARD ME WITH RAISES AND PROMOTIONS PRESUMABLY

23    FOR GOOD JOB PERFORMANCE AND GOOD CONDUCT.

24        THE COURT:  THAT'S WHAT THE ATTORNEY SAID.  THEY TRIED

25    TO HELP YOU BECAUSE YOU WERE A GOOD EMPLOYEE, YOU KNOW, IN

1    THE WORK PLACE.

2        MR. CLEMENTS: AND I HAVE A CASE TO CITE, SIR. AS

3    STATED IN <u>ROBIN V. SIDEMAN BROTHERS, INCORPORATED</u>, 153 VIRGINIA

4    289, 163 SOUTHEAST 103 FOR 1990, EXCUSE ME, A 1932 CASE,

5    QUOTE, "WILLISTON ON CONTRACTS, VOLUME TWO (2), SECTION

6    SEVENTY-TWENTY-FIVE (725) HAS THIS TO SAY. QUOTE, IN THE

7    LAW OF MASTER AND SERVANT, IF THE MASTER HAS CAUSE JUSTIFYING

8    THE DISCHARGE OF A SERVANT AND NEVERTHELESS CONTINUES WITH

9    KNOWLEDGE OF THE FACTS TO RECEIVE THE BENEFIT OF THE

10   SERVANT'S SERVICES, HE CANNOT AFTERWARDS MADE THE BREACH

11   GROUND FOR A DISCHARGE. PROMPT ACTION SHOULD BE REQUIRED

12   SO THAT THE MASTER DOES NOT PUT HIMSELF IN THE INCONSISTENT

13   POSITION OF RECEIVING BENEFIT FOR THE CONTINUANCE OF THE

14   CONTRACT WHILE IT SUITS HIS CONVENIENCE SO TO DO AND AT THE

15   SAME TIME RESERVING THE RIGHT OF ENDING IT WHEN THAT SUITS

16   HIS CONVENIENCE," END QUOTE.

17       BABCOCK & WILCOX, AND THEY WILL ADMIT, IT'S AN

18   UNDISPUTED FACT, SIR, THAT THEY NEVER MADE ME AWARE OF ANY

19   DISPLEASURE THEY MAY HAVE HAD REGARDING MY LETTER WRITING.

20   WHILE I WAS WRITING LETTERS THEY REWARDED ME PRESUMABLY FOR

21   GOOD JOB PERFORMANCE AND GOOD CONDUCT WITH RAISES AND

22   PROMOTIONS. HOW AM I TO KNOW WHAT LOYALTY IS? AND I ALSO

23   HAVE A BRIEF ARGUMENT REGARDING MY LOYALTY AND I WOULD

24   APPRECIATE IT IF I COULD DO THAT.

25       TO THE EXTENT THAT MY LOYALTY IS AN ISSUE,

1   DEFENDANT CONNER'S DEPOSITION CONTRADICTS DEFENDANTS'

2   KEY ASSERTION. THIS CREATES A GENUINE DISPUTE OF MATERIAL

3   FACT, THERE BEING A QUESTION OF FACT THAT THIS ISSUE MUST

4   GO TO TRIAL. IN LINES SIXTEEN (16) THROUGH NINETEEN (19)

5   OF PAGE THIRTEEN (13) OF MR. CONNER'S DEPOSITION WHICH IS

6   ATTACHED TO PLAINTIFF'S REPLY TO DEFENDANTS' REPLY

7   MEMORANDA OF POINT AND AUTHORITY IN SUPPORT OF THEIR

8   MOTIONS FOR SUMMARY JUDGMENT AS EXHIBIT H, I ASKED HIM DID

9   HE HAVE ANY REASON TO BELIEVE THAT I WAS A DISLOYAL EMPLOYEE

10  AND HE SAID SIMPLY NO. NOW, MR. CONNER IS THE VICE PRESIDENT

11  AND GENERAL MANAGER OF THE NAVY NUCLEAR FUEL DIVISION FOR

12  BABCOCK & WILCOX. HE IS THE OFFICIAL SPOKESPERSON FOR THE

13  NAVAL NUCLEAR FUEL DIVISION AND HE SAID THAT I WAS NOT A

14  DISLOYAL EMPLOYEE. AND I THINK THAT THAT CREATES A GENUINE

15  DISPUTE OF MATERIAL FACT.

16       ALSO, I AM PREPARED TO ADDRESS THREE (3) POINTS

17  THAT THE DEFENSE HAS MADE REGARDING WHAT THEY CONSIDER TO

18  BE DISLOYALTY. I AM REFERENCING THE LAST PARAGRAPH OF PAGE

19  SEVENTEEN (17) AND CONTINUING ON PAGE EIGHTEEN (18) OF THEIR

20  MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT BABCOCK &

21  WILCOX COMPANY. DEFENDANTS STATE THAT I WAS DISLOYAL

22  BECAUSE OF THREE (3) REASONS. THE FIRST ONE IS, QUOTE,

23  "ONE (1), HIS LETTER WRITING CAMPAIGN IN WHICH HE DISPARAGED

24  AND POSSIBLY DEFAMED B & W AND ITS CORPORATE ETHICS ALONG

25  WITH MANY OF ITS OFFICERS, MANAGERS AND EMPLOYEES WHO HE